JOHN J. McDONALD *v.* EQUITABLE LIFE
INSURANCE SOCIETY.
[No. 51, April Term, 1934.]

*Decided July 13th, 1934.*

The cause was argued before BOND, C. J., URNER,
ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Horace P. Whitworth,* for the appellant.

*Walter C. Capper* and *Charles Markell,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appellant, McDonald, sued in this case to recover
monthly benefits, payable, under a policy of insurance,
upon proof that the insured had before reaching sixty
years of age become totally and permanently disabled by

injury or disease, and to recover back the amount of a premium paid by him after he had made his claim. The policy relieved the insured from further obligation for payment of premiums in case of disability. Judgment was rendered for the defendant, upon a verdict directed by the court, and the appeal of the plaintiff has followed. A claim by the same plaintiff for disability from the same cause at an earlier time had been defeated by the adverse finding of a jury and judgment in the District Court of the United States, and the claim now asserted is one for continued and increased disability from the same cause in the period immediately following the disposition of the first suit.

The policy provided, more specifically, for payment of the benefits and waiver of premiums upon proof "that the insured became totally and permanently disabled by bodily injury or disease after this policy became effective and before its anniversary upon which the Insured's age at nearest birthday is 60 years." and "disability" was defined in a clause that: "Disability shall be deemed to be total when it is of such an extent that the Insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value, and such total disability shall be presumed to be permanent when it is present and has existed continuously for not less than three months."

McDonald's first suit, instituted in December, 1931, in the Circuit Court for Allegany County, was removed to the federal court, and tried there on September 29th, 1932; and the judgment for the defendant was entered on October 1st, 1932. This second suit was instituted on July 6th, 1933, to recover benefits and the premium, as stated, for disability from the same cause beginning on the day of the judgment in the first suit. The second claim had been previously filed on March 20th, 1933; about three months before the insured reached the age of sixty, and the benefits demanded were those alleged to have accrued up to the time of the institution of the suit. The record and testimony in that first suit were intro-

duced in evidence in the second, and it clearly appears that in both suits, apart from the different periods of disability alleged, the issue was disability from a disease of the heart from which the plaintiff was supposed, by himself and his witnesses, to have been suffering since 1928, four years before. The testimony in both suits covered, to a 'large extent, the same ground; McDonald's condition being reviewed in both from the year 1928.

It has not been contended in either case that the plaintiff's mental or bodily activities were obstructed by any injury or disease except as they may have been rendered unsafe, inactivity enforced, and disability thus brought about, by the danger of bringing on pain or death from angina pectoris. The plaintiff's testimony, summarized, is that he was born on June 18th, 1873, had been inured to hard work from childhood, principally about coal mines, and had risen to be, in succession, a mine manager, partner in ownership of mines, and sole owner. A son took charge of his mines in 1926. Thereafter the father continued to go to the mines sometimes, and also went by automobile to see customers, until October, 1929, when he quit work altogether. He was a heavy man, weighing about 235 pounds in 1928. In the latter part of that year, 1928, feeling some heart symptoms, he had consulted a physician, now dead, and had been told that he had angina pectoris and should cease all activities. He then went to Dr. Everhart, one of the witnesses in the trials, and has since been treated by him for angina pectoris. The plaintiff testified that he suffered from pains about the heart after physical exertion, or after worry and excitement, and as a consequence could not attend to any business that might worry him; and as he was worried by any business, and even by reading newspapers, he was disabled from all gainful occupation as described in the policy. He did not cease all activity whatever. He was not forbidden to go upstairs; at one time before October, 1932, he climbed 162 steps to his mine, but without the knowledge of his physician. He walked to nearby stores and to a barber shop. In Febru-

ary, 1932, he made a trip by train from his home near Cumberland to Texas, where he owned an orchard. His physicians have never seen him during an attack such as he complains of, except once, and then the attack was mild, and over in a few minutes. The prescriptions for him have been doses of digitalis, and a life of leisure and ease, with full sleep. The medicines commonly carried about for immediate relief from angina pectoris were never prescribed, and no morphine was ever given.

In contradiction of this testimony, physicians who examined the plaintiff on behalf of the defendant testified that the pains and attacks described were not characteristic of angina pectoris, but were much less severe, and could have been brought on by conditions normal to a man of that age, that prolonged examinations had failed to reveal any indications of angina pectoris or disability, and that the plaintiff would be better off if he would find some occupation which would take his mind off himself.

On this testimony, the plaintiff still contends that he has since 1928 been disabled by angina pectoris, and that the same condition, continued, has disabled him further than before 1932. It is testified that the attacks have occurred more frequently, and at different hours, coming on recently at night or early in the morning unassociated with any movement or effort, and that there are more severe attacks. He continues to walk about somewhat, and to go upstairs. In May or June of 1933, after he had made his second claim of disability, he rode in an automobile from his home near Cumberland to Towson and back; but he testifies that on the way to Towson he had pain in the heart, weakness, and sweating that made him stop for two hours at Frederick. In July of the same year, 1933, he rode from his home to Ohio and back again without inconvenience. While on a diet, he said, he did not stick to it very closely, and he did not know whether that was responsible for his condition or not. Defendant's testimony applicable to this later period, too, was, as stated, that there was no angina pectoris, that the attacks complained

of were much milder, and far different from those of angina pectoris, and that the plaintiff needed an occupation.

The policy having been kept alive, the insurer was entitled to recover for disability accruing, as he alleges, upon or after the conclusion of his first suit, if such disability should be shown. Failure to prove the disability at one time did not terminate the disability insurance. Whether the evidence now adduced was legally sufficient to prove the fact, and to require a reversal of the judgment for the defendant, is a question on which the judges are not of one mind, but in the view of the majority it is not sufficient. It is settled as between the parties that the disability did not exist up to October, 1932. No new, intervening obstruction to the plaintiff's exercise of his powers is testified to, and his testimony shows that he can still travel, climb stairs, and engage in other activities within the powers thus illustrated. And the pains and depressions he testifies to, if they may be said to disable him to any extent, are not sufficient to show the disability insured against, namely, a total, permanent disability preventing him from engaging in any occupation or performing any work for compensation of financial value. This conclusion would require direction of a verdict for the defendant upon the prayers submitted, and no error is found, therefore, in that action by the trial court.

<em>Judgment affirmed, with costs.</em>

ADKINS, J., filed a dissenting opinion as follows, in which URNER and DIGGES, JJ., concurred.

I am unable to concur in the opinion of the court:

The appellant sued the appellee under the disability clause in a life insurance policy which provides: "And further, if the insured becomes wholly and permanently disabled before age 60, The Society will waive subsequent premiums and pay to the insured a disability annuity of Two hundred and fifty dollars a month subject to the terms and conditions contained on the third page hereof," of which conditions the following bear on the question of liability in this case:

"Disability benefit before age 60 shall be effective upon receipt of due proof before default in the payment of premiums that the insured became totally disabled by bodily injury or disease after this policy became effective and before its anniversary upon which the Insured's age at nearest birthday is 60 years."

"Disability shall be deemed to be total when it is of such extent that the Insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value, and such Total Disability shall be presumed to be Permanent when it is present and has continued for not less than three months * * *."

The claim is for $250 per month during the period from March 20th, 1933, the date of furnishing proof of claim to the company, to the date of bringing this suit, July 1st, 1933; and, in addition thereto, the amount of all premiums paid by plaintiff during the continuance of such disability after March 20th, 1933, up to the time of bringing this suit. There are only two questions presented by this appeal: (1) Is the claim of plaintiff res adjudicata by reason of the verdict of the jury, in favor of defendant on September 29th, 1932, on which judgment was entered, in a suit, between the same parties on the same policy tried in the United States District Court for the District of Maryland, where the issue tried was whether, during the period from June 24th, 1931, the date of proof of claim, to September 28th, 1932, the date of trial, the plaintiff was disabled to such an extent that he was prevented thereby from engaging in any occupation or performing any work for compensation of financial value. And, if the question is not res adjudicata as to plaintiff's condition since the date of said trial: (2) Is there any evidence in the record of sufficient probative force to carry the case to the jury, tending to show that plaintiff was so disabled during the period from March 20th, 1933, the date of the second notice and proof of claim, up to the time of the bringing of the present suit?

The trial court refused plaintiff's prayers (which were presented on the theory that the verdict in the former

trial was not conclusive as to plaintiff's condition since the date of that trial), and granted defendant's general demurrer prayer, and also its demurrer prayer instructing the jury that by the judgment in the federal court it was conclusively established that the plaintiff was not, during the period from June 24th, 1931, to September 28th, 1932, disabled to such an extent that he was prevented thereby from engaging in any occupation or performing any work for compensation of financial value, and that there is no evidence legally sufficient to show that he has since September 28th, 1932, and on or before March 20th, 1933, become disabled to such an extent, and that therefore their verdict must be for the defendant. The only exception is to the ruling of the court on these prayers.

The issue presented in the present case, as to the later period, is identical with that presented in the former case, as to the earlier period; and it is conceded by appellant that the former verdict and judgment are conclusive as to plaintiff's condition up to the date of the former trial. But his contention is that it does not follow that his condition was the same after that trial: and that there was evidence tending to show that plaintiff's disease was progressive and that it grew worse and more disabling after the time of the former trial. All the physicians produced by plaintiff, except Dr. Everhart, testified as to examinations made, and history given them by plaintiff, prior to the time of the former trial. While Dr. Everhart was his physician and had seen him about once a week for several years up to the trial of the present case, it does not appear that he made a regular examination of his physical condition after November 9th, 1929. He saw him at the doctor's office some time during the month of the trial.

"Q. Did you notice any difference in the condition of Mr. McDonald now from what it was on September 29th, 1932, or immediately after that, when you saw him next after that? A. Well, from his history, I believe that he is worse in this way, but just from the physical condition I believe that his condition is about the same * * *."

The doctor had just before testified that when plaintiff

visited him he constantly told him he should avoid any mental or physical exercise that would have the least tendency to bring on these attacks. "He would report and tell me of things that would bring on these attacks, and my advice to him was not to repeat them—to avoid them. Avoid anything that would tend to bring on these attacks."

On cross-examination witness was asked.

"Q. Well, do you tell the jury to-day that Mr. McDonald is simply to sit still and do nothing? A. I tell the jury that the best thing for Mr. McDonald is to lead a quiet life and to avoid those physical and mental activities that have the least tendency to bring on attacks. I think Mr. McDonald can best tell what will bring on an attack. Q. Now, doctor, you don't mean to tell the jury that physicians go by the patient's fears in that matter altogether? A. No, but I think a man in Mr. McDonald's condition would be apt to become worried, if he attempted to transact business, and since he has told me that efforts to attend to business bring on attacks, I think he should avoid such attempts. Q. Do you think then it would injure him to sit quiet and talk to his customers? A. Yes, sir; I told him I thought he should give up that sort of thing. Q. Is it commonly understood among physicians that patients must give up the slightest effort to talk about or to attend to business in a moderate way? A. Well, it is common when it is a thing which brings on attacks of angina pectoris. I don't recall that he has told me that since 1929."

It will thus be seen that Dr. Everhart's testimony leaves much doubt as to whether anything had happened since the former trial, other than what the patient had told him (and he doesn't seem to be very positive about that), to satisfy the doctor that plaintiff's condition had changed for the worse since the time of the former trial. Physicians produced by defendant negative the claim that plaintiff is totally disabled, and also the diagnosis of angina pectoris. But, of course, for the purposes of the question before us, we must disregard testimony produced by defendant.

As the record stands, the only substantial testimony in the case to show any material change in plaintiff's condition since the former trial is that of plaintiff himself, and that is not very strong or very different from that given by him at the former trial, except that he testified that his attacks since the former trial had been more frequent and much more severe. The testimony of his physicians was much the same at both trials.

But it must be remembered that the verdict of the jury in the former trial was, not that plaintiff did not have angina pectoris, but that he was not *then* totally disabled. The testimony of his physicians was that the disease is progressive and that plaintiff should not do anything that induced the attacks. This, together with plaintiff's testimony that the slightest physical or mental effort brought on the attacks and that these attacks were more frequent and more severe, was sufficient to take the case to the jury; and it was for the jury to pass on the weight of all the testimony and to determine whether plaintiff had become totally and permanently disabled since the former trial.

It would be both wearisome and superfluous to cite authority for the proposition that, in Maryland, issues of fact must be submitted to the jury when there is any evidence of probative force to support them, however strong the evidence to the contrary may be, and whatever may be the opinion of the court as to the merits of the case. The court must assume, in the first instance, that the jury will fairly weigh *all* the testimony, and will exercise its conscience, common sense, and experience in so doing; and that it will not mulct in damages an insurance company when on the same testimony it would not have required an individual defendant to pay. But if the trial court is satisfied in any case that the verdict is the result of sympathy or prejudice, and that it would be iniquitous to permit it to stand, it is just as much its duty to grant a new trial, as it was to submit the case to the jury. This is the only remedy our law provides for cases of such miscarriage of justice, and courts should not withhold it.

416

For the reasons stated we think there was error in granting the prayers of the defendant. The prayers offered by plaintiff should have been granted, with a modification of the measure of damages prayer by inserting after the word "month" the words "for such time as the jury find the total and permanent disability continued." Defendant's E prayer would have been correct if after stating that the judgment in the federal court was conclusive as to the period between June 24th, 1931, and September 28th, 1932, it had further instructed that in order to find for the plaintiff the jury must find from the evidence that plaintiff had become totally and permanently disabled since September 28, 1932, to such an extent that he was prevented thereby from engaging in any occupation or performing any work for compensation of financial value.