COMMERCIAL CASUALTY INSURANCE COMPANY
*v.* JAMES ZAJIC

[No. 8, October Term, 1938.]

*Decided October 26th, 1938.*

The cause·was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Charles Jackson* and *David Ash,* with whom was *Mark Jackson* on the brief, for the appellant.

*J. Mayer Willen,* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

Claiming disability indemnity by reason of the loss of the entire use of one hand and one foot within the meaning and terms of a disability policy issued by Commercial Casualty Insurance Company, James Zajic brought suit and recovered judgment for four hundred and fifty dollars in the Superior Court of Baltimore City, and from this judgment an appeal is prosecuted by the insurer.

During the trial five exceptions were taken by appellant to adverse rulings made by the trial court. The first four of these concern the evidence, and the fifth relates to its action upon the prayers.

At the time of the issuance of the policy and down to the date of his alleged incapacitation by reason of illness, appellee was a special policeman for the Baltimore & Ohio Railroad Company, his duties being that of a watchman at Locust Point, and the policy by which he was insured listed his occupation as "special agent." The provisions of the policy to which it is deemed necessary to refer are as follows:

"The Insuring Clause—This policy insures against— (1) the effects resulting directly and exclusively of all other causes, from bodily injury sustained during the life of the policy solely through External, Violent and Accidental Means (Suicide, sane or insane, not included), said bodily injury so sustained being hereinafter referred to as 'such injury' and (2) disability resulting from illness which is contracted and begins during the life of this policy and after it has been maintained in force for thirty days from its date, hereinafter referred to as 'such illness,' as follows:

"Part I—Principal sum.....................Six Hundred Dollars
"Monthly Accident Indemnity..........................Sixty Dollars
"Monthly Illness Indemnity...........................Sixty Dollars"

"Part IX—Permanent Disability Indemnity—If, during the period of disability covered by Part VIII, 'such illness' alone shall result in the insured's irrecoverable loss of the entire sight of Both Eyes, the permanent loss of the entire use of Both Hands, or Both Feet, or One Hand and One Foot, and provided the insured survives such loss for one year, the Company will pay in addition to any other indemnity payable hereunder, a lump sum equivalent to ten times the Monthly Illness Indemnity specified in Part I."

It was provided in Part VIII, Sec. (a), that for the period not exceeding six consecutive months, during which the insured should be necessarily and continuously

confined in the house and regularly visited at least once every seven days by a legally qualified physician, solely by reason of "such illness," the company would pay illness indemnity at the rate per month specified in Part I.

By the first count of his declaration, appellee sought to recover the difference between six monthly illness indemnity payments of sixty dollars each mentioned in the policy, less six payments of forty-five dollars per month for six months which were made him by the insurer, and by the second count to recover for the permanent loss of the entire use of one hand and one foot a sum equivalent to ten times the monthly illness indemnity.

The insurer contended that because of Zajic's occupation he was by the policy improperly rated, and that the rating should have been forty-five dollars per month, which amount it had paid him for six consecutive months in accordance with the terms of the policy, and further made the contention that he had not lost the entire use of one hand and one foot within the meaning of Part IX of the policy.

The verdict of the jury having been for the plaintiff for $450 instead of $600, it must follow that appellant's contention with respect to the amount of monthly illness indemnity, to wit, forty-five dollars, was accepted. But regardless of whether this is true, that matter is not before us, as no instruction concerning it was requested either by appellant or appellee, nor is the question presented by any ruling made upon the admissibility of evidence.

At the trial below, it was stipulated that the plaintiff had paid all premiums under the policy, that proof of loss, demand and notice as required by its terms had been made, and "it is simply a question of construction." It was further admitted that the plaintiff met with some illness on September 17th or 18th, 1935.

The defendant's first and second prayers were refused, its third and fourth granted in connection with plain-

tiff's first and second, but its fifth was refused because covered by its third and fourth. Appellant's first and second prayers sought instructed verdicts for the defendant, the former upon the ground that the plaintiff had offered no legally sufficient evidence to prove he had suffered the permanent loss of the entire use of one hand and one foot, and the latter upon the ground that the plaintiff had offered no evidence legally sufficient to entitle him to recover. Since both prayers were offered at the close of the entire case, and were limited entirely to the evidence offered by the plaintiff, it cannot be contended that, as thus presented, they were adequate as demurrer prayers. *Day v. Weinstein*, 148 Md. 104, 128 A. 897; *Schnader v. Brooks*, 150 Md. 52, 132 A. 381; *Johnson v. Western Maryland Rwy. Co.*, 151 Md. 422, 135 A. 185; *Prince George's County v. Timmons*, 150 Md. 511, 133 A. 322.

But apart from this, even though the prayers had been broad enough to relate to the entire evidence offered, we are of the opinion that they should have been rejected, for the reason that the evidence was sufficient to require its submission to the jury upon the question as to whether appellee had sustained the permanent loss of the entire use of one hand and one foot within the meaning of the policy. The plaintiff testified in effect that subsequent to his illness on September 18th, he was getting ready to go to work and fell from his chair. After getting up, he went to work, but was compelled to return home shortly thereafter, and after sitting on his porch for a few minutes he lay down, from which time he could not walk, and for three months afterwards was unable to stand on his feet, and at the time of the trial he could not stand on them at all; that from March, 1936, he got out on the pavement and walked in the sun, but could not use his left arm, and at the time of the trial his left arm was simply "dead," and his foot was "gone"; that he could not grasp anything with his left hand and was unable to cut up his food; he could only move the large toe of his left foot, and had no movement of his

foot and ankle, and his right foot took care of the left. He further testified that he put weight on his right foot and got off the left as fast as he could; that he dragged it along and got the motion with his left leg from the hip; that since he took out the policy he had not changed his occupation, which was that of special police for the Baltimore & Ohio Railroad, his duties being to watch the piers at Locust Point; that upon a few occasions he had ridden down town on the street car and visited offices, but usually he was accompanied by his sister, who held him by the left arm, and in addition to her support he was required to use his cane, and with the aid of the cane, and his sister on his left side, he could walk. His sister, Amelia Smith, substantially corroborated him.

Doctor Henry C. Houck testified that in September, 1935, he was first called in the case and observed that Zajic had a total paralysis of the left side of the body, which meant that a hemorrhage had occurred on the right side of the patient's brain, causing facial paralysis, shoulder, left hand and left leg complete paralysis; that while he had normal use of the right side, the flexors of his left hand were entirely paralyzed, and he could pick up nothing satisfactorily, his hand being "no good" to him; that he could swing his foot, but could not stand upon it; and the movement of the left limb from the knee down was accounted for by the use of the upper muscles. He further stated he had paraesthesia of the tissue, which was a dead sensation, the flexors were involved, and he could not handle his foot. He said: "When he takes a step he has got to drag his foot. He walks with a rolling gait. He has trained himself to use his hip muscles; his foot is no good to him."

Appellant produced three witnesses, the first of whom was Arthur R. Padgett, an attorney, who testified in substance that upon three or four occasions he had seen appellee at his office, and had seen his sister, Mrs. Smith, on some occasions, but when she was not there he got out of the office without assistance, but he was uncertain whether he always carried a cane, and Doctor Miller,

also produced by appellant, stated that in December, 1936, when he examined appellee, there was a marked weakness of the left arm and left leg, but he could walk with the aid of a cane. At the time of the trial, the witness considered his condition was practically unchanged, but viewed the loss of use as partial. The witness Tongue, appellant's general agent, testified that, in paying his monthly illness indemnity, he had twice observed Zajic coming in and going out of his office, and did not recall that anyone accompanied him.

The defendant's third prayer, granted in connection with plaintiff's first and second prayers, instructed the jury correctly as to the burden of proof on the part of the plaintiff to enable them to find that he had suffered the permanent loss of the entire use of one hand and one foot, while by its fourth, which was also granted in connection with plaintiff's first and second instructions, they were instructed that if the plaintiff had partial use of one hand and one foot, or of either one hand or one foot, their verdict must be for the defendant. We feel that the instructions presented appellant's theory of the case as fairly as it could rightfully ask. Moreover, no error is found in the rejection of its fifth prayer, which was the converse of its fourth granted prayer.

While counsel for appellant was arguing before the jury, he was interrupted by the court, who then and there instructed the jury orally, the official stenographer having left the room. To this oral instruction, appellant excepted. The instruction and the occurrence which occasioned it are contained in a certificate of the trial judge to the effect that counsel was explaining his conception of loss of total use of a foot or hand, in the course of which he told the jurors he knew a man who was president of a large corporation who had lost the use of one hand, but that it did not deprive him of his ability to function as president; that he could tie his shoe lace with his right hand, strike a match and light a cigar with one hand, and still function as president of the corporation. At this point the court, in the presence of

the jury, suggested that the written instructions were not to be interpreted as based on the test whether a man with only one arm and only óne leg could still get or hold a position as watchman, but it must be conceded that if a man had his entire left arm amputated at the shoulder, and his left leg amputated at the hip he would be deprived of the total use of a hand and foot, and would under a policy of this character be able to recover thereon for the total loss of use of those two members, notwithstanding he might still get or hold a position as watchman; that the test in the case as applied to the facts was whether plaintiff had entirely lost the use of one hand and one foot. The exception to the court's remarks was made in such manner that the jurors were not aware of it, but since this exception is included in the fifth exception, relating to the rulings upon the prayers, it is insisted that neither it nor the rulings upon the prayers were properly before the court, since they embrace two distinct matters. Many decisions are referred to us in support of that proposition, and undoubtedly in a proper case the rule should be applied, but here the exception relates to instructions of the court which were, given orally. In view of this we see no impropriety in dealing with the exception in connection with the other instructions, which were written.

The policy in question insured appellee against the permanent loss of the entire use of one hand and one foot, and the argument of appellant's counsel to the effect that, although such loss had been sustained, recovery therefor could not be had, because of appellee's ability to use his remaining hand and foot, was unfair and if accepted by the jury would unquestionably have misled them and caused a miscarriage of justice. Under such circumstances, the trial court was entirely justified in interrupting counsel and explaining to him the effect of the granted instructions, and since the oral instructions were proper, no error is found in this regard. *Barron v. Smith*, 108 Md. 317, 70 A. 225 and cases there cited.

Appellee's prayers Nos. 1 and 2 were, as amended by

the court, granted in connection with appellant's third and fourth. The first of these instructed the jury that permanent loss of the entire use of one hand and one foot as mentioned in the policy of insurance under consideration meant the total and permanent loss of their use in the practical, everyday, work of appellee, and did not mean total destruction of the function of the hand and foot, and if the jury found that, because of insured's illness, he sustained a permanent and entire loss of the use of one hand and one foot in his practical and everyday affairs and of their use in the work in which he engaged, then they should find for the plaintiff.

By the second, the jurors were instructed that permanent loss of the entire use of one hand and one foot within the meaning of the policy sued on meant that so much of the use of the hand and foot must be lost as would render the remaining parts of both the hand and foot of no material and practical use and benefit.

Appellant urges that appellee's first and second prayers are erroneous, because defining permanent and entire loss of use of one hand and one foot in relation to their use by appellee in his practical and everyday affairs of life, also that they are in conflict with the third and fourth instructions granted appellant. As to the first of these objections, we are not persuaded that the weight of authority is in favor of his contention. There was evidence in the case, both medical and lay, which, if believed by the jury, would have enabled them to find that appellee's left hand and left foot were entirely useless, and if this was the case, it is difficult to understand how he could use them to any advantage in any form of employment, and it is equally incomprehensible as to why the test of their utility should not bear some relation to his occupation. 7 *Couch Cyclopedia of Insurance Law*, secs. 1684-1686-1688; *Smoak v. Southeastern Life Ins. Co.*, 175 S. C. 324, 179 S. E. 56; *Moss v. Metropolitan Life Ins. Co.*, 230 Mo. App. 70, 84 S. W. 2nd 395; *Hamblin v. Equitable Life Assurance Society*, 124 Neb. 841, 248 N. W. 397; *Oswald v. Equitable Life Assurance Society*, 128 Neb. 173, 258 N. W. 41.

It may be conceded that appellee's first prayer was inartificially drawn, but the legal propositions there asserted are not erroneous. Moreover, the contention that the instructions granted on behalf of appellee were inconsistent with those granted appellant must fail, for the two last mentioned instructions failed to define the disability which appellee must have sustained to entitle him to recover, whereas that omission was supplied by appellee's prayers.

Concerning the four exceptions taken to the admissibility of testimony, the first was reserved to the action of the trial court in refusing to strike out the answer of Doctor Houck to a question as to whether appellee had sustained total loss of use of the hand, his answer being that it was "no good" to him; while the second exception was taken to the court's permitting him to answer whether in his opinion, based upon knowledge which as his attending physician he had acquired of Zajic, the paralysis had resulted in his permanent loss of his entire left hand and left foot. Later the physician was asked to state, from the knowledge he had acquired of the patient's physical condition by treating him, if Zajic was or not wholly disabled by reason of paralysis from engaging in his work as a watchman of the Baltimore & Ohio Railroad. The court overruled an objection to that question, adding "Of course, it is not limited to that but that is a part of it." The fourth exception was taken to the court's refusal to sustain an objection to a question propounded appellee as to whether since his accident he had been able to return to his work. No error was committed in these rulings. The inquiries were relevant and the witnesses to whom they were directed possessed such intimate knowledge as to enable them to answer.

We have found no reversible error in any of the rulings complained of, the case was fairly submitted, and the judgment appealed from should not be disturbed.

*Judgment affirmed, with costs.*