## PROVIDENT MUTUAL LIFE INSURANCE CO. OF PHILADELPHIA *v.* GEORGE P. CROWTHER

[No. 41, October Term, 1942.]

*Decided January 12, 1943.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, MARBURY, and GRASON, JJ.

*S. Ralph Warnken*, with whom was *Edward A. Smith* on the brief, for the appellant.

*Charles D. Harris*, with whom were *Kenneth C. Proctor* and *France, Rouzer & Lentz* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This is a suit brought by the plaintiff, George P. Crowther, against the Provident Mutual Life Insurance Company of Philadelphia, defendant, on three life insurance policies issued by the appellant to the appellee, in each of which there was a permanent disability clause, at an extra cost. The claim is for disability benefits and premiums from May 12, 1941, to date.

The pertinent provisions of the policies sued on are:

"The company hereby agrees, after receipt at its Home Office of due written proof of the total and permanent disability of insured, as hereinafter defined * * * during the continuance of such total and permanent disability, to pay a monthly income of ($10.00, $35.00, $50.00) dollars * * * and in addition to waive all premiums payable under the terms of said policy * * * falling due after the approval by the company of such written proof and during the continuance of such total and permanent disability. * * * The term 'total and permanent disability' * * * is defined as follows:

"(A) Disability caused by bodily injury or disease, which wholly prevents the Insured and presumably will for life continuously and permanently wholly prevent him from engaging in any business or occupation or performing any work for compensation, gain or profit; or

"(B) Disability caused by bodily injury or disease, which wholly prevents the Insured from engaging in any business or occupation or performing any work for compensation, gain or profit and which shall have wholly

and continuously so disabled the Insured for not less than ninety days immediately preceding the date of receipt of due written proof of such disability."

The case was tried before the court sitting as a jury. From a judgment for the plaintiff, the defendant appeals.

The question here is whether on May 12, 1941, and since, the plaintiff was and is so totally and permanently disabled as to wholly prevent him from engaging in any business or occupation or performing any work for compensation, gain, or profit.

It is the kind of a case that exposes a man's life history to the gaze of the world and the scrutiny of the court.

The first policy was issued February 24, 1923, with a monthly disability of $10; the second, April 8, 1927, with a monthly disability of $50; and the third, May 7, 1927, with a monthly disability of $35. The insurance premiums were $326.60, with additions for disability insurance of $53.14. The premiums were all regularly paid for over ten years. The plaintiff is now fifty-eight years of age. About 1936, his health began to fail him, but it was not until January, 1938, that he consulted Dr. Raymond Hussey of Baltimore, who had had a wide and varied experience as practitioner and teacher. There can't be any doubt about his qualifications. The plaintiff told him that for about two years he had been getting worse with a severe cough, shortness of breath, insomnia, and loss of appetite. Dr. Hussey on examination found that he had pulmonary emphysema, loss of elasticity of the lung and ability to inflate, and chronic bronchitis. He advised him to come to the hospital, but he continued with his work for nearly a month, when, having become worse, he voluntarily returned and entered the hospital on February 13th, where he remained until March 3, 1938. He told the plaintiff he would be unable to go on with his work as he had been doing it. He would have to get someone as a partner to relieve him of the heavy part of the work, and that he should go from fall to spring to a milder climate. On Dr. Hus-

sey's advice, he did go to Florida, in the meantime disposing of his business.

The plaintiff was a butcher, with a meat market in Lafayette Market in Baltimore. He began to work in a grocery store as a meat cutter when he was fifteen. At about twenty-one, he started in business for himself, with a market stall. It was a one-man business. The only help he had was a colored boy on Saturdays. Plaintiff was in the market every day from early morning until late in the evening, except on Saturdays when he worked for twenty to twenty-two hours. He said his income was from $75 to $85 a week. After Dr. Hussey told him he must get a partner or assistant, he could not make arrangements with anyone, and sold his fixtures, which cost him $5,000 to another man in the same market for $1,500, and went to Miami, Florida, where, with occasional visits to Baltimore in the spring and summer, he has resided ever since. He at once applied to his insurer for disability benefits, and it recognized the claims and paid him regularly from February 13, 1938, to May 12, 1941, he, in the meantime, being relieved of the payment of premiums. Since the payments were discontinued, he has resumed the payment of premiums, for which he sues as well as the monthly benefits.

Dr. Hussey, who has examined the plaintiff every year since 1938, testified that there was no change in his condition, that his opinion still is that he can engage in no business requiring physical exertion. In answer to a question by the court: "Do you ever expect him to get to the point where he can do an ordinary butcher's job?" Dr. Hussey said, "I do not, sir, as I might say qualifying that, not with any degree of comfort or efficiency."

Dr. Hollis F. Garrard of Miami, who testified by deposition, said he had been visited by the plaintiff at his office twelve times from January 10, 1940, to May 27, 1942, at which times he examined him and prescribed for him. That his condition has not improved since he first saw him, and was such that he could not engage in any gainful business or occupation.

Dr. M. Jay Flipse, of Miami, on behalf of one of the other insurers examined the plaintiff August 30, 1939. He said of that examination: "I estimated his disability was partial, but conclude my estimation of disability by saying he was estimated at about 50 per cent. for sedentary occupation, but 100 per cent. for an occupation requiring physical activity. I found his prognosis poor for recovery and questionable for improvement." He examined him again April 1, 1941, and found him to be better. "April 1st he was probably 70 per cent. disabled for physical pursuits that required heavy physical labor, but there appeared to be relatively little handicap for sedentary pursuits." The net result of Dr. Flipse's testimony is that the plaintiff might do clerical work, but not the physical labor of a butcher.

Dr. Edwin B. Jarrett thought he could stand "a moderate amount" of work in a butcher shop, and constant and sustained hours of employment, but did say it would be injurious if exposed to a refrigerator.

Dr. John T. King, who made an examination the day before testifying, said, "I feel he could not for physical reasons, go back to the retail open market type of work. He could go back to a medium indoor type of work, if it were confined to wholesale and required no physical exertion."

After the plaintiff and his wife went to Florida, they bought an eight-family apartment house, mostly on mortgage, which has been substantially reduced. There was some effort on the part of the defendant to show that the plaintiff managed it, and, therefore, he was able to be and was actually engaged in a gainful occupation. The size of it would indicate that it did not require much management, and was not such as to be characterized as a business. The plaintiff and his wife occupied one of the apartments, and she, and not he, managed it. He would, if she were not there, accept rent from tenants, or show apartments to prospects. He did none of the chores around the place; they hired a man to do them.

A private investigator was employed by the defendant, to watch the plaintiff, and kept a diary, which didn't miss anything. It covered seven days in February, 1941, and ten days in December, 1941. The activities noted required little, if any, exertion, and consisted mostly of visits to the grocers, drug stores, post office, and bank; things that almost any invalid, not bed-ridden, might do, and to us, do not prove the ability to engage in any occupation or materially reflect on the issue here raised by the defendant.

When it comes to the interpretation of the words, total and permanent disability, we get little help from the decisions which are so numerous and so divergent as to leave one in a hopeless maze. In some, the question is one of fact for the jury, though in practically all, if it appears to be uncontradicted that the insured can earn or has been earning anything, no matter how little, he is not, as a matter of law, totally disabled.

In one case (*Prudential Ins. Co. v. Brookman*, 167 Md. 616, 175 A. 838) this court, though not decisive of the questions involved in the appeal, did define, in a similar policy, the question of the extent of disability necessary to a recovery, as follows: "It is true that the issue on the question of disability may easily be misconceived. It is not one of injury or impairment in some or any degree. Partial disability, however great, is not relevant. The insurance that the plaintiff bought was not against reduced earning power, or against loss of health. It was insurance carefully confined to present, complete and final deprivation of ability to work or earn money, or compensation of money value, in any way. The benefits are secured only if the insured shall become totally and permanently disabled, 'to such an extent that he is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financing value during the remainder of his lifetime.' (The policy here does not contain the words, 'remainder of his lifetime'). Disability which is complete and final, and can be no greater, is the contin-

gency." This is about as extreme a definition of the rule as can be found in the books, and the defendant argues and insists that it is the proper test. The plaintiff's answer is that it is obiter, which does not stamp it as an incorrect statement of the law; also that the trial judge is supported by the facts in this case. If the meaning of this is, as defendant contends, then few except paralytics and the insane would be eligible for benefits.

We have had two other cases in which similar policies have been sued on, but the questions there presented did not involve the definition of total disability. In *McDonald v. Equitable Life Ins. Soc.*, 167 Md. 407, 173 A. 580, there was a defense of *res judicata*, a suit having been decided adversely to the claimant in the Federal court nine months before this suit was brought, and the trial court holding that there had been no change in his condition since the first suit was tried, on appeal was affirmed by this court by a divided vote. The other case was *New England Mutual Life Ins. Co. v. Hurst*, 174 Md. 596, 199 A. 822, where one of the questions was whether disability, but lasting indefinitely, was a permanent disability under the terms of the policy.

It is not necessary for us to decide now whether we approve or disapprove of the definition of total disability as quoted from *Prudential Life Ins. Co. v. Brookman, supra*. There is still the disputed question of fact, as to whether the plaintiff is totally disabled from engaging in any business or occupation or performing any work for compensation, gain, or profit. None of the physicians on either side deny that Mr. Crowther is ill, and will never be well, so that his disability is permanent.

When plaintiff applied for his insurance, he gave his occupation as butcher, so engaged for twenty years, never did anything else, and didn't expect to. The insurer knew it was insuring a butcher. At fifteen, he went to work as a meat cutter. In five years, he was in business for himself with a one-man shop. And by industry and thrift succeeded in a small way. When nearing forty years, he took out in this company two endowment poli-

cies for $1,000 and $5,000, which would mature in twenty-six and twenty-seven years, and an ordinary life policy for $3,500. He was thus providing something for his old age and his family's protection. For the additional relatively small sum of $53.14, he bought disability insurance, which was usually limited to sixty and sixty-five years. It was very attractive and easy to sell, and nearly everybody who insured was buying this feature. Such policies are not on the market any more. Not because there have been so many suits on the provision, but because more men are disabled at sixty years than they guessed, and not enough outliving the term of the disability clause. The plaintiff was one who did become disabled, and that when he was fifty-three years of age. He was not well for two years before he saw a physician; he fought it off himself. When he did go to Dr. Hussey, he didn't hunt him; his daughter, a trained nurse, worried about her father, went to the physician and made the first appointment with him. The doctor wanted him to enter a hospital at once; he was reluctant to do so, and put it off for a month, when becoming worse he took the advice. Coming out of the hospital, he sold out his business at a great sacrifice and went to Florida, where he took up his residence. Dr. Hussey reports to the insurer from March, 1938, to May, 1940, were that the plaintiff was totally disabled, and especially to engage in work requiring physical exertion. Dr. Garrard was just as positive as Dr. Hussey, and they saw the plaintiff oftener than all the others. The physicians testifying for the defendant all admit that physically he is much impaired. They don't know whether he is fitted for anything but to physically run a butcher shop or not. The plaintiff was not a man of education; all he knew was work, and his condition now may be due to his having worked too hard and too long hours. Their testimony as to what he could or might do is plainly guesswork and conjecture. The defendant knowingly insured a butcher, and now when he can no longer pursue that vocation, to free themselves of liability, offer some evi-

dence of the plaintiff's fitness or aptitude for some other work. In nearly every case cited to us, there was some concrete evidence that the insured was doing some other work or engaged in some gainful business or occupation.

In our opinion the trial judge was justified in his conclusion by the facts in evidence, and the judgment appealed from should be affirmed.

*Judgment affirmed, with costs.*