## THE TRAVELERS INSURANCE COMPANY *v.* JOSEPH N. BERLIN

[No. 36, October Term, 1945.]

*Decided December 17, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*G. Van Velsor Wolf* and *Charles C. G. Evans,* with whom were *Marbury, Gosnell & Williams* on the brief, for appellant.

*A. David Gomborov* for appellee.

HENDERSON, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Court of Common Pleas of Baltimore City, rendered on a verdict of a jury in favor of the appellee. The action was brought by the appellee for permanent total disability benefits under a life insurance policy. The questions presented are: (1) Whether the opinion of a medical witness was properly admitted in evidence; (2) whether the appellant was entitled to a directed verdict; and (3) whether the court's charge to the jury correctly stated the law of the case.

The policy in question was issued to the appellee on May 19, 1925. It provided life insurance in the amount of $5,000 on the life of Joseph N. Berlin, and further provided for disability income in the amount of $50 a month and waiver of premiums. The premium for the life insurance was $101.30 per year, including $7.10 for the disability feature. The clause dealing with "permanent total Disability Benefits" read as follows:

"Upon due proof that since the payment of the initial premium upon this contract, before a default in the payment of any subsequent premium and before the anniversary of this contract nearest to the sixtieth anniver-

sary of the date of birth, the insured has become wholly disabled by bodily injuries or disease and will be continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the company will waive the payment of any premiums which may fall due on this contract during such disability and will pay from the commencement of such disability and during its continuance the disability income stated on the first page of this contract."

The appellee was thirty-four years old when the policy was issued. At that time, as stated in his application, his occupation was "Furniture Manufacturing, Texas, Md." In 1929, he contracted tuberculosis of the throat and lungs. On November 5, 1931, he was sent to a sanitarium in Colorado and remained there until June, 1934. At the time he entered the sanitarium, the tubercular condition of his lungs and throat had reached such a stage that he lost his voice completely; the pain he suffered was so severe that he was unable to eat or drink. Both lungs were involved as well as his entire larynx. After treatments lasting about two and a half years his condition had improved so as to permit his return to Baltimore, where he continued the same type of therapy.

In 1931 the appellee filed a claim for permanent total disability benefits. The claim was approved and regular monthly payments were made from July 15, 1931, up to and including April 15, 1944, during which period premiums were also waived. Since April 15, 1944, the date on which this action was instituted, no further payments were made and the company insisted upon the payment of premiums. It was stipulated that if the verdict should be for the plaintiff, the amount should be $251.30, consisting of three monthly payments and one premium payment.

The appellant sought to justify the termination of payments on the ground that on April 15, 1944, the appellee had recovered from his illness to such an extent that he was not "wholly disabled," within the meaning of the policy, so as to be "continuously and wholly pre-

vented thereby for life from engaging in any occupation or employment for wage or profit." The extent of disability is, therefore, the primary issue in the case.

Dr. J. Julian Chisholm, called by the plaintiff, testified that he examined the plaintiff on July 22, 1944, and previously on February 26, 1937. On both occasions he found extensive scarring of the larynx, the result of healed tuberculosis, and stenosis of the larynx, as a result of scar tissue. He explained that stenosis means a narrowing of the lumen, or air-passage; the latter was narrowed approximately two-thirds, leaving about one-third of the normal space through which to breathe. This caused difficulty in breathing or shortness of breath on exertion. He found no evidence of active tuberculosis in the nose or throat on either occasion.

The witness was then asked whether he came to any conclusion, on February 26, 1937, as to whether or not the insured was totally disabled. Over objection, he answered: "It was my belief that he was." He was then asked whether he came to any conclusion, on July 22, 1944, as to whether the insured was totally disabled, and over objection, the witness said: "My opinion at that time was that in as much as I could see no change in his condition I saw no reason to change my previous opinion that he was still disabled." At this point the Court asked the witness what he meant by "totally disabled." He replied: "Well, your Honor, I don't know that I could give a legal definition of that." The Court then said: "No I don't want a legal definition; I want you to tell us as a doctor what this man could do and what he could not do." The witness replied: "I don't think he could do any form of work that required exertion; I think if he could sit at a desk all day he could do that without impairing his health." No objection was taken to these questions by the Court.

It is contended that it was error to permit the witness to testify that the appellee was "totally disabled," because it called for a conclusion of the witness upon the

ultimate fact in the case which was for the jury alone to determine.

We think it is clear from the testimony as a whole that the witness was not undertaking to render a verdict. In the case of *Prudential Ins. Co. v. Brookman,* 167 Md. 616, 626, 175 A. 838, 841, where medical witnesses testified that the plaintiff was "totally and permanently disabled," this Court said: "But it is to be borne in mind that the physicians in this instance were not testifying entirely as experts. Both of them had examined the insured, and testified from personal knowledge of facts, and give their conclusions on those facts, as well as others testified to. Their answers, all read together, seem to the court to have removed the cause for objection that they were rendering verdicts on the case to be considered and decided by the jury." In the case of *Travelers Ins. Co. v. Needle,* 171 Md. 517, 521, 189 A. 216, 218, where the question propounded to a medical witness was whether the plaintiff was "permanently disabled," this Court said: "The form of the questions propounded may be the object of some criticism, but under the circumstances in this case, this does not constitute reversible error." See also *Commercial Casualty Ins. Co. v. Zajic,* 175 Md. 368, 378, 1 A. 2d 903.

In the case at bar the questions put by the court made it perfectly clear to the jury that the witness was not undertaking to give a legal definition of the phrase used in the policy, but, on the contrary, was expressing his opinion as to the physical capacity of the claimant in view of his medical history. Thus, any inferences to be drawn from the answers of the witness were limited and qualified by the explanation elicited by the court. We find no prejudicial error in the court's rulings.

Dr. Weinberg, called by the plaintiff, testified on the basis of an examination on June 27, 1944, and a number of previous examinations, that "the entire right half of the larynx all the way down is completely out of commission in functioning for talking or in the act of widening the passage for inhaling and exhaling." As

to the effect of this condition upon the insured's ability to work, he said: "that would impair the flexibility of his cords, which are necessary to an extent for easy breathing, and would necessarily lead to fatigue. I don't believe that Mr. Berlin personally could hold down any job, any kind of a job personally for a whole day."

Dr. Louis P. Hamburger, called by the plaintiff, testified that he had treated the insured since 1929. In 1938, there was still a certain amount of activity in the left lung, which had entirely cleared up by 1944, so that he was not suffering from any active tubercular condition. As to ability to work, the witness said he thought the insured could do some "light clerical work," if an employer would accept him, knowing his past medical history and disabilities, if the job would allow a two-hour daily rest period, if the insured did not have to hurry, inducing shortness of breath, and if he could stay at home when he caught a cold "because it is notorious that one who has had tuberculosis is prone to have tuberculosis activated by repeated colds."

Dr. George McLean, called by the defendant, testified, on the basis of an examination on March 15, 1944, that the tuberculosis was completely arrested and that the insured was able to engage in the same type of occupation he was in before he was taken ill. He testified that the insured told him he had been general manager of a furniture manufacturing business, spending part time on the road as salesman.

Dr. Charles R. Austrian, called by the defendant testified, on the basis of an examination on April 6, 1944, and previous examinations, that the insured's tubercular condition had been arrested, and that he "should be capable of carrying on a sedentary occupation that does not necessitate marked physical effort, * * * not capable of carrying on gainful occupation that requires sustained physical effort, as much because of dispnea (shortness of breath) consequent upon tracheal, bronchial narrowing, as because of the hazard of activating his tuberculosis. He is physically fit to undertake a sedentary

occupation such as bookkeeping or accounting, provided such resumption of activity is undertaken on a graduated scale. * * * I do not know where a man of his age could get a job like that."

Dr. Edward A. Looper, called by the defendant, testified on the basis of an examination in March, 1944, that the insured had obstructions of the right half of the epiglottis, paralysis of the right vocal cord, some adhesions, and scar tissue formation. Witness felt he could do sedentary work, something like bookkeeping, or things that do not require an unusual amount of exertion or hard strenuous labor.

The plaintiff, called by the defendant, testified that he lived with his sister and brother, that he finished eighth grade in school and took a six months' course in shorthand and typewriting, that he worked as general clerk and stenographer before he went into the Army in 1917, but not afterwards. He also testified that for the past several years he drove his sister's automobile to Texas, Md., nearly every Saturday, to collect rents owned by him, his brother or his sister on eight or nine small houses, and also one or two rents in Baltimore City. If minor repairs were needed, he employed a man to make them. He received no commissions for doing this, and was not in the real estate business. He admitted signing an application for supplemental gasoline ration coupons to carry on the "business" of "servicing property, real estate and collecting rents."

This Court has passed upon the validity of claims involving total disability in life insurance policies in several recent cases. In *McDonald v. Equitable Life Ins. Soc.*, 167 Md. 407, 173 A. 580, it was held (three judges dissenting) that total disability was not shown, so as to require submission to a jury, where the testimony was as to a heart ailment which precluded strenuous exertion. The testimony was that the insured had retired from active business, and turned over the mine which he owned to his son, before he suffered the disability.

In *Prudential Ins. Co. v. Brookman, supra,* the disability claimed was due to an apoplectic or paralytic stroke brought on when the insured was run over by an automobile. The stroke caused complete stoppage of speech and action for a period, but there was gradual improvement. In addition, he suffered from a heart disease. The insured was a tailor, doing pressing and repair work, and while he discontinued pressing, he did collect clothes and supervise the work to some extent. It was held that a jury question was presented, because of the medical testimony from which total disability could be inferred.

In *Provident Mut. Life Ins. Co. v. Crowther,* 181 Md. 283, 29 A. 2d 661, 663, the disability claimed was due to pulmonary emphysema (loss of elasticity of the lung and ability to inflate) and chronic bronchitis. On his doctor's advice, the insured sold his butchershop and moved to Florida. There was medical testimony that he could not engage in any business requiring physical exertion, and that he could not engage in any gainful business or employment. There was also medical testimony that he might do clerical work, but not the work of a butcher, that he could stand a moderate amount of work as a butcher, and that he could go back to a medium indoor type of work, if it required no physical exertion. There was testimony that the insured, when he moved to Florida, bought an eight-family apartment house, which he managed. He hired repairmen, collected rents from tenants, and showed apartments to prospective tenants.

The facts in the Crowther case were strikingly similar to those in the case at bar, yet in that case the court, reviewing a judgment of the trial court, affirmed it. In the case at bar we think there was legally sufficient evidence of total disability in the testimony of Dr. Weinberg and Dr. Hamburger, to present a question for the jury. Their testimony, which we have set out in detail, would at least permit an inference that the insured was not able

to engage in any occupation or employment for wage or profit.

This testimony is not destroyed by the insured's admissions in connection with the collection of rents. What he actually did in the way of rent collection was little more than the insured in the Crowther case, where this Court said: "The activities noted required little, if any, exertion, and consisted mostly of * * * things that almost any invalid, not bedridden, might do." The Court also said as to the management of the apartment house, that it was "not such as to be characterized as a business." In the case at bar the admissions of the insured as to statements in his application for gasoline ration coupons did not weaken the force of his testimony as to what he actually did. We are not here concerned with a possible violation of the rationing law. Even as to that, it is conceivable that he might have been entitled to gasoline for "business" purposes, within the meaning of the Federal Statute, and still not have been engaging in an occupation of employment for wage or profit, within the meaning of the policy.

The fundamental question in the case at bar turns upon the legal interpretation of the language of the policy. There is practically no dispute as to the medical findings; there is little dispute as to the actual extent of the activities of the insured; the disagreement is only as to the kind, amount and value of work he might be capable of performing.

The particular clause in question has been considered by the courts in nearly all of the States. In a comprehensive note in 149 *A. L. R.* 7, 11 (supplemented in 153 *A. L. R.* 430), it is said: "Nearly all the decisions agree, either expressly or by necessary implication, that the clause in an accident policy or in a life policy providing for payment of indemnity in case the insured is totally or wholly disabled from engaging in any occupation or employment for wage or profit will not be construed, as a literal construction would require, as meaning a state of absolute inability to carry on any

vocation whatever * * *." It is also said (149 *A. L. R.* p. 13) : "But with the repudiation of a literal construction of the total disability clause the uniformity of the decisions reaches its end, and there are sharp divisions among them in regard to the question just how far the rule of liberal construction shall be allowed to carry the courts away from the express words of the insurance contract."

It is interesting to note, however, that courts which originally took an extreme position, either towards literal or liberal interpretation, appear to be reaching a common ground in the concept of total disability. See *Hoover v. Mutual Trust Life Insurance Company,* 1938, 225 Iowa 1034, 282 N. W. 781, overruling *Lyon v. Railway Passenger Assurance Company,* 1877, 46 Iowa 631; and see *Mutual Life Insurance Company v. Bryant,* 296 Ky. 815, 177 S. W. 2d 588, overruling *Prudential Insurance Company v. Harris,* 254 Ky. 23, 70 S. W. 2d 949.

Despite language in the Brookman case, *supra,* 167 Md. 616, 625, 175 A. 838, 842, that the clause in question covers only "disablity which is complete and final, and can be no greater," we must recognize that physical handicaps may wholly prevent a claimant from engaging in an occupation or employment for wage or profit, even though they do not render him absolutely helpless. The facts in the Brookman case, as well as the facts in the later Crowther case, demonstrate that a state of helplessness is not a prerequisite to recovery, but on the contrary that the disability need only be such as to render the claimant unable to perform the substantial and material acts of his own or some other business or occupation in the usual or customary way. The disability clause does not insure against inability to pursue a particular occupation; if there is any other occupation open to the insured for which he may be fitted by education, training or experience and which, yielding a reasonably substantial gain or profit, rises to the dignity of an income or livelihood, recovery may be defeated.

In the case at bar, there was testimony that the insured was not performing any work except trivial and occasional acts in connection with the collection of investment income. The question whether he could perform the duties of a furniture manufacturer, or clerical duties of the type he performed prior to 1917, was properly one for the jury, in view of the divergence in the testimony, which must be taken in the light most favorable to the insured, in considering its legal sufficiency.

We think the trial court's oral charge to the jury correctly stated the law of the case, and required a finding that the plaintiff was wholly disabled from doing such work as he was physically qualified to do, in order to support a verdict. The appellant complains (1) that the charge did not include an instruction that the policy was not one protecting him against impairment of health, and (2) that it did not state, as requested, that inactivity because of a fear of consequences to health does not excuse the insured unless the danger is imminent or so close that anyone under such a threat must be idle and deprived of his power of earning in any way.

On the first point, the court charged, "I might say further that it is not a policy of insurance against reduced earning power. It is not a question of whether he is only able to earn half of what he used to earn; it is not a question of partial disabality, it is a question of total disability." There was no contention that the policy insured against impairment of health, and that not being an issue in the case, there was no occasion for the court to discuss it in the abstract. *Stirling v. Stirling* 64 Md. 138, 146, 21 A. 273.

On the second point, there was no suggestion that the insured did not work because of fear of the consequences, as there was in the Brookman case, *supra*. The court did say: "It isn't a question of lack of desire to work * * * we are talking about lack of ability to work in any work which he is qualified to do." While the requested instruction was correct in the abstract, it was predicated upon a finding that the plaintiff was inactive

because of an unreasonable apprehension as to the consequences of activity. We find nothing in the case to support this hypothesis, except a statement of Dr. Austrian, to the effect that sustained physical effort by the insured would result in shortness of breath and might result in activating his tuberculosis, in support of his conclusion that the insured could undertake only a sedentary occupation. All of the medical witnesses agreed that the insured could not safely engage in work requiring strenuous exertion. Since there was no basis for the requested instruction, it was properly refused. *Stirling v. Stirling, supra.*

*Judgment affirmed, with costs.*