SHIVERS ET VIR *v.* CARNAGGIO ET AL.

[No. 71, September Term, 1960.]

*Decided December 12, 1960.*

*Motions for rehearing and for modification of opinion filed January 11, 1961, denied January 18, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Amos I. Meyers,* with whom was *Moses J. Cohen* on the brief, for appellants.

*Frederick J. Green, Jr.,* with whom were *C. MacNair Speed* and *Lord, Whip, Coughlan & Green* on the brief for Robert Henry Gaskin and Wilbert Thompson, t/a Social Taxicab Co., two of the appellees.

HAMMOND, J., delivered the opinion of the Court.

A housewife whose back was injured when the taxicab in which she was riding was struck in the rear by an automobile sued both drivers and the owner of the cab, as did her husband. The jury returned a small verdict in their favor against all defendants and they appealed, claiming that her physicians were restricted from giving their opinions of her disability from the accident, to her prejudice, that the fact

the automobile driver was not insured should have been kept out of the case and not argued to the jury by the lawyer for the cab company, and that there was error in admitting hospital records of the housewife (who will be referred to hereinafter as appellant).

Appellant testified she had never had trouble with her back before the accident, and that since she has had continual trouble and could not wash, iron, or cook as before, or properly take care of her young baby. During her pregnancy after the accident she was nervous and listless and is still weak.

An orthopedic specialist, who had examined appellant at the request of the general practitioner to whom she had gone after the accident, testified that she had tenderness and pain in the lower part of the lumbar spine, with a limitation of movement and pain on forward, and right and left lateral bending. He said the X-rays showed a slipping of the vertebra, "a joggling at the end of the spine," and that the claimant had a pre-existing bone defect to which the accident added a traumatic injury. He added that he had evaluated her disability and reached a prognosis but on objection was not allowed to say how great the disability was or its effects. Counsel for appellant told the court he was not seeking an answer as to the extent of industrial disability. The doctor gave the prognosis that pain would continue but no further amplification was permitted.

The general practitioner testified as to the many visits to him by appellant, that the accident had aggravated an existing back defect, that she had had no trouble with her back before the accident, and had so told him, and that she had a sprained back with "muscle spasticity." He was asked his opinion of the extent of disability and his prognosis. His reply "that she has sustained approximately a 20 per cent loss of use of the lower back" was stricken on motion of defense counsel and the jury told to disregard the answer. Appellant's counsel protested, and then again asked for a prognosis. The court said to the witness: "* * * let me caution you not to refer to percentages such as you previously mentioned. * * * If you want to refer to a degree of limitation in percentages, that is all right, but not as you have previously attempted to do." The doctor answered: "It is my opinion that she has

sustained a permanent partial injury to her lower back," saying to the court: "Is that all right, sir?"

The parties have narrowed the issue presented for decision. They agree that a qualified physician can testify as to physical and functional impairment or loss of use of the body or a part or member thereof, that is, as to anatomical disability, and may express that impairment or loss of use in percentages of normal. They part on whether the doctor may give his opinion as to the effect of the anatomical disability on the habits and activities of the victim, personal and economic. The appellant urges that he can; the appellees say: "Appellants complain, in effect, that their doctors were not permitted to use the magic words—'20% disability to the back' * * *. Admittedly, this form of evidence has been in vogue, without objection, for some years. Apparently, it had its beginning in workmen's compensation cases, in which the language of the statute required such testimony; and it found its way, without objection, into the trial of common law negligence cases. * * * the function of the medical expert is limited to the determination of the extent to which a person has lost the motion of a portion of their body and is not to determine the extent to which a person is disabled as a result of that loss of motion. * * * Evidence as to a percentage of disability given by a doctor from the witness stand invades the province of a jury because it states the ultimate fact which is to be determined by the jury."

Courts have differed on the question. We think the sound view is that a physician who has, in addition to his medical knowledge, familiarity with and understanding of the activities and occupation of his patient, may express an opinion as to the extent to which the anatomical disability will cause personal or economic disability. Whether in a particular case the physician has such extra-medical knowledge is primarily for the trial judge to decide in the exercise of a sound discretion.

Wigmore and McCormick agree that the test of admissibility of an expert's opinion should be whether his testimony will be of real appreciable help to the trier of fact in deciding the issue presented. 7 *Wigmore, Evidence* (3rd Ed., 1940),

Sec. 1923: "But the only true criterion is: On *this subject* can a jury from *this person* receive appreciable help?" *Mc-Cormick, Evidence,* Sec. 11: "It is believed that the standard actually applied by the trial judges of today approaches more nearly the principle espoused by Wigmore [Vol. 7, 3rd Ed., Sec. 1918], namely that the opinion should be rejected only when it is superfluous in the sense that it will be of no value to the jury."

Both Wigmore and McCormick think little of the argument that opinions on the very issue before the jury should be rejected because they invade the province of the jury. *7 Wigmore, op. cit.* Sec. 1921, deals with this idea as follows: "When all is said, it remains simply one of those impracticable and misconceived utterances which lack any justification in principle." *McCormick, op. cit.* Sec. 12, page 26, says: "It is believed, however, that this general rule is unduly restrictive, is pregnant with close questions of application, and often unfairly obstructs the party's presentation of his case."

Many appellate courts, in cases in which the point had been contested below, have held that a doctor could correlate his medical knowledge and skill, his estimate of the patient's anatomical impairment and his understanding of the patient's personal and economic activities into an opinion of how far those activities had been and would be curtailed.[1]  Some de-

---

1. Mintz v. Atlantic Coast Line R. Co. (N. C.), 72 S. E. 2d 38, 42 (doctor's opinion that his patient's physical condition after the accident disabled her from doing any kind of work); DeVore v. Mutual Life Ins. Co. of New York (Mont.), 64 P. 2d 1071-1075; Federal Underwriters Exchange v. Cost (Comm. App. Tex.), 123 S. W. 2d 332 (an enlightening opinion held that a doctor's conclusion that plaintiff was unable to secure or retain employment and to perform the usual tasks of a workman was admissible); Marland Ref. Co. v. McClung (Okla.), 226 P. 312, 313 (doctor could testify that results of a skull fracture would interfere with plaintiff following his occupation); Southern Underwriters v. Knight (Tex. Civ. App.), 107 S. W. 2d 1097, (a back injury would prevent the doing of manual labor). The doctor was permitted to give his opinion on the plaintiff's ability to work or earn a living in Southwest Metals Co. v. Gomez (C. C. A., 9th Cir.), 4 F. 2d 215, 218; United States v. Calvey (C. C. A., 3rd Cir.), 110

cisions have limited such opinions to every day simple activities.[2]

In other decisions the appellate court has approved the expression below of medical opinion on the amount of curtailment of personal or economic activity in terms of percentage.[3] As the appellant stresses, and the appellees concede, there are countless cases in Maryland and other States in which opinions as to disability have been received and acted on as a matter of course where they came in without objection.

---

F. 2d 327, 330; and Corrigan v. United States (C. C. A., 9th Cir.), 82 F. 2d 106, 108. In 7 Wigmore, Evidence (3rd Ed.), Sec. 1975, the author agrees with the rule of the cases cited.

2. Price v. Industrial Comm. (Utah), 63 P. 2d 592; Silver King Coalition Mines Co. v. Industrial Comm. (Utah), 69 P. 2d 608, 613. In the latter case the Court said: "Where the testimony is as to common industrial, economic, or household functions, such as climbing ladders, sweeping, digging, etc., the doctor may state the man's ability to physically function in such terms." Compare Williams v. Dawidowicz, 209 Md. 77, 85, where, after medical testimony had indicated the per cent of anatomical disability of the wrist and hand, a lay expert was permitted to answer hypothetically that a man with that disability could not operate a complicated machine.

3. Seal v. Blackburn Tank Truck Service (N. M.), 327 P. 2d 797, 800 (the Court held that a physician may testify as an expert as to his opinion of physical impairment expressed in percentages "and further that an examining physician or an attending physician when testifying as a medical expert, after taking into consideration claimant's age, education, training, general physical and mental capacity, and ability to obtain and retain gainful employment, may express his opinion as to the *percentage of disability* of the claimant * * *. In either instance the purpose of the testimony is to assist the jury in arriving at a correct determination of the extent of the claimant's disability * * *."; Standard Oil Co. v. Sewell (4th Cir.), 37 F. 2d 230; Acme-Evans Co. v. Schnepf (Ind.), 14 N. E. 2d 561, 564 (the doctor could give percentage of loss of ability to do manual work, factory work, and work in a grocery store); Ott v. Perrin (Ind. App.), 63 N. E. 2d 163, 166 (the doctor was allowed to testify that plaintiff had lost from one-third to forty per cent of his economic usefulness); Hartford Accident & Indemnity Co. v. Harris (Civ. App. Tex.), 138 S. W. 2d 277, 278; compare Rowe v. Gatke Corp. (7th Cir.), 126 F. 2d 61, 67, cert. den. 317 U. S. 702, 87 L. Ed. 561.

This Court has given various indications that it agrees in general with the views of Wigmore and McCormick. In *Casualty Insurance Co. v. Zajic,* 175 Md. 368, there was an affirmance of the trial court's action in permitting the attending physician to give his opinion that plaintiff had permanent loss of use of his entire left hand and foot and was wholly disabled from continuing his work as a railroad watchman. In *Prudential Insurance Co. v. Brookman,* 167 Md. 616, 625, 626; *Travelers Insurance Co. v. Needle,* 171 Md. 517, 521; and *Travelers Insurance Co. v. Berlin,* 185 Md. 404, 409, it was held not to have been error for the trial court to have overruled objections and allowed the doctor to give his opinion that the insured claimant was totally disabled. In each case the opinion rejected the argument that this brought before the jury expert opinion on the very issue it was the responsibility of the jury to decide. In the case cited last, Judge Henderson said for the Court: "We think it is clear from the testimony as a whole that the witness was not undertaking to render a verdict * * * the questions put by the court made it perfectly clear to the jury that the witness * * * was expressing his opinion as to the physical capacity of the claimant in view of his medical history. * * * We find no prejudicial error * * *." After thus approving the giving of an opinion of physical capacity to work, the Court went on to consider the opinions of five doctors as to what kind of work, and how much of such work, the claimant could undertake.

In *Williams v. Dawidowicz,* 209 Md. 77, 87, the injured plaintiff during all his working life had operated a precision screw machine of a certain type. Doctors had testified as to the percentage of anatomical disability and limitation of use of the wrist and hand. An expert lay witness was allowed, over objection, to say in answer to a hypothetical question that a man with that disability was not competent to operate the precision machine. This Court said: "If the expert opinion is reasonably calculated to assist the jury, and not to confuse it, such testimony is admissible, in the sound discretion of the trial court * * *."

In the case before us, we find the discretion of the trial court not to have been soundly exercised and the appellant's

presentation of her case to have been improperly hampered. The orthopedic specialist was not allowed to express an opinion even as to the extent of anatomical disability. The opinion of the general practitioner that there had been a twenty per cent loss of use of the lower back was stricken and the jury told to disregard it. This opinion apparently was intended to be as to loss of physical function, which the appellees concede is proper. Neither doctor was allowed to express an opinion, in percentage or otherwise, as to the effect of appellant's physical impairment on her or her future activities. In this we think there was error requiring reversal.

The fact that the defendant who owned the automobile involved in the accident was uninsured came before the jury by chance. There is no reason to anticipate that if the case is retried this will happen again, and we see no need to discuss or decide the questions raised in connection with the point.

There remains the admissibility of the hospital records of the appellant.

There was read to the jury by appellees' counsel those portions of the record dated before the accident which referred to complaints of appellant as to low back pain or symptoms. The appellant, her husband, and the general practitioner all had testified she had suffered no back pain, trouble or symptoms before the accident. The record was admissible as containing statements of appellant which contradicted testimony on facts which were not only relevant and material but the heart of the case. *Kantor v. Ash,* 215 Md. 285.

Appellees read that part of the hospital record of appellant dated after the accident to show that she had consulted the hospital for ailments and complaints she had not told her doctors about and to show that her disability, nervousness and lethargy were, or could have been, attributable to these other ailments and not to the accident. These parts of the record were relevant also as reflecting on the credibility of appellant and the value and responsibility of her doctor's opinions, reached without their having been told of these other ailments.

> *Judgments reversed, with costs, and case remanded for a new trial.*