## MOHAMED ANWAR HADID ET UX. *v.*
## HARRY TOUSSAINT ALEXANDER

[No. 1143, September Term, 1982.]

*Decided July 11, 1983.*

The cause was argued before LISS and BLOOM, JJ., and JAMES C. MORTON, JR., Associate Judge of the Court of Special Appeals (retired), specially assigned.

*Louis Fireison,* with whom were *Daniel Blum* and *Louis Fireison & Associates, P.A.* on the brief, for appellants.

*Harry Toussaint Alexander* for appellee.

LISS, J., delivered the opinion of the Court.

On August 23, 1978, appellant, Mohamed Anwar Hadid, was arrested in the District of Columbia, on a warrant issued in Montgomery County, Maryland, on a charge of false pretense (bad check). Appellant contacted appellee, Harry Toussaint Alexander, an attorney admitted to practice in the District of Columbia, who agreed to represent him. The next day appellant, with appellee as counsel, appeared before a Superior Court judge in the District and was released. On September 20, 1978, a Montgomery County magistrate released the appellant on an unsecured $10,000.00 bond.

As a result of subsequent events appellant and his wife initiated an action in the Circuit Court for Montgomery County, in August, 1980, against Alexander, alleging legal malpractice, deceit, intentional infliction of emotional distress, and injury to appellant's marital relationship, arising out of the appellee's representation of the appellant in the criminal proceedings.

Both appellant and appellee, after the suit was filed, began a series of legal moves which culminated in the case being set for trial. The trial, originally scheduled in the District Court on the criminal charge, for November 20, 1978, was twice postponed at appellant's request. At the time the second request for continuance was granted the presiding judge noted "no more continuances." Appellant at trial of the legal malpractice suit testified that in April of 1979 he telephoned Alexander to confirm the trial date of April 23, 1979. Alexander advised him he was ill and that he would secure a continuance. Appellant contended Alexander did not inform him the continuance might be denied nor did Alexander suggest he hold himself in readiness in case the continuance was denied. The records of the District Court indicate that on April 20, 1979 Alexander moved for a continuance based upon his own (Alexander's) illness. In any case, appellant did not appear and a bench warrant was issued for his arrest. The testimony was in sharp conflict as to whether appellant was notified to appear, his reasons for failing to appear, and whether appellant was ever advised of the issuance of a bench warrant. Eventually, appellant was arrested at his home on the bench warrant. He was taken to the District of Columbia Jail, booked, fingerprinted and incarcerated. Appellant employed local counsel in Montgomery County and the criminal charge in the District Court was resolved in favor of appellant. It was after the disposition of the criminal charge that this suit for legal malpractice was filed. Trial of the case resulted in four days of hotly disputed testimony and, at the conclusion of appellant's case in chief, directed verdicts were granted on the counts alleging deceit and intentional infliction of emotional distress. At the conclusion of all the testimony the case was submitted to the jury and it returned a verdict in favor of the appellee. It is from these judgments and numerous rulings on the evidence that the appellant has filed this appeal.

The issues to be determined by this appeal are:

I. Whether admission into evidence of documents and witness testimony, where the

proffering party failed to produce those documents or supply information regarding that witness during discovery procedures, constituted reversible error by the trial court.

II. Whether the trial judge committed reversible error when he refused to hear a motion to strike counterclaim, prior to the start of the trial.

III. Whether the lower court committed reversible error when it refused to allow an expert witness to answer hypothetical questions.

IV. Whether the trial judge committed reversible error when he accepted into evidence a transcript of a District Court proceeding which was not authenticated and was not certified to be a true test copy.

V. Whether the trial judge committed reversible error when he admitted into evidence a court jacket of a case from the District Court for Montgomery County, Maryland.

VI. Whether the trial judge committed reversible error when he gave an instruction on contributory negligence.

VII. Whether the lower court committed reversible error by denying appellant's motion for summary judgment on the counterclaim.

VIII. Whether the lower court committed reversible error when it denied appellant's motion for release of security for costs.

I.

Although appellant has presented this question in his brief in three parts, we concluded they should be considered together, as they are all controlled by the basic issue, *i.e.,* what sanctions should have been imposed by the lower court because of appellee's failure to comply with discovery requests.

On May 18, 1982, appellant filed a Notice of Deposition notifying Alexander to appear for a deposition and produce, *inter alia,* "Any and all documents in your possession relating to the case of *State of Maryland v. Hadid,* District Court No. 320466-78 . . . memoranda or notes of any telephone calls between you and any other person referring to or relating in any way to *State of Maryland v. Hadid . . .* Any and all documents which you intend to use at trial in the above cause."

Alexander failed to appear. An order compelling discovery, pursuant to Rule 422, Maryland Rules of Procedure, was issued, requiring Alexander to produce ". . . all the documents designated in the Notice of Taking Deposition. . . ."

Alexander again failed to appear. The court then ordered him to appear for the deposition and produce the designated documents on June 21, 1982, two days prior to trial.

At the deposition, in response to a request for notes of any telephone calls relating to appellant's criminal case, Alexander replied that he would provide all documents by five o'clock that afternoon and that "if I have that, it's in the papers I will send you." When asked for *all* of the documents he intended to use at trial, Alexander replied that he would supply them by five o'clock and that, in any event, they were listed in his pretrial statement. Alexander did produce certain documents, but did not produce any memoranda or notes of telephone calls allegedly made to Mr. Alexander's office referring to appellant's criminal case. When asked if there were any other documents he might use at trial, he answered, "I think I've [exhausted] it."

When trial began on June 23, 1982, Alexander never notified appellant or his counsel that any documents had been found which fell within the scope of the deposition document request, and did not include any memorandum of a telephone call in his list of pretrial exhibits.

At trial, Alexander offered into evidence a memorandum of a telephone call allegedly made by appellant's brother and received by Mr. Alexander's office which stated that appel-

lant could not appear for the April 23, 1979 trial because he was ill. Despite objection by appellant's counsel, the trial judge permitted the alleged memorandum of the phone call from appellant's brother to be read into evidence.

The introduction of the memorandum was prejudicial to appellant since the impression given by the information in the alleged telephone message was that appellant failed to appear at trial for his own personal reasons, rather than because he had been notified that Alexander would seek a continuance due to Alexander's illness. That the jury was troubled by this conflict is evidenced by the fact that it returned its verdict in favor of Alexander after it requested a clarifying instruction on contributory negligence.

At the deposition, Alexander testified that all of his witnesses were listed "in the pretrial submission. If there are any additions or substitutions, I will present them."

Agnes Alexander, daughter of the appellee, was *not* listed in appellee's pre-trial statement, nor was any notice given of appellee's intention to call her as a witness.

At trial Alexander called his daughter as a witness in his behalf and over objection she was permitted to testify by the trial judge. Except for the parties to the suit, Ms. Alexander was the only witness called to testify on behalf of the appellee. We are not impressed with appellee's contention that she was an "impeachment" witness whose identity could not have been determined prior to trial. Appellee elicited from his daughter extensive testimony which was highly prejudicial to appellant's case. Appellee's conduct throughout the deposition proceedings was calculated to deny appellant a fair opportunity to prepare his case and avoid the surprises deposition procedures are supposed to prevent.

When appellee finally appeared for deposition on June 21, 1982, two days before trial, he was requested to produce all documents he proposed to introduce at trial. He produced a limited number of documents and stated under oath that these were all the documents he intended to introduce. In spite of this affidavit, on the final day of trial after all parties

had rested, Alexander submitted for introduction into evidence a letter allegedly written by the Medical Records Librarian of George Washington University Hospital which indicated there was no record of the appellant ever having been admitted to the hospital as a patient. Appellant had testified that the original trial date in the District Court of Montgomery County had been continued because of a medical problem for which he received treatment at the hospital. In spite of appellee's failure to comply with the deposition rules and the basic rules of evidence the trial court permitted the admission of the letter and it was read to the jury.

It is clear to us that the trial court was in error in admitting the document into evidence. It is a well established rule of law that no documentary evidence other than business records may be allowed into evidence unless the document is properly authenticated. *Schutz v. Breeback,* 228 Md. 179 (1962). Unless it is a self-authenticating document, some witness must appear and testify as to what the document is.

Further, unless the information contained in the document falls within one of the hearsay exceptions, it should not be admitted into evidence without authentication. *Smith v. Jones,* 236 Md. 305 (1964).

The trial court erred in permitting the introduction of the documentary evidence not disclosed to the appellant during deposition proceedings and in permitting the testimony of the witness not disclosed as required.

The clear policy of Maryland discovery rules is to encourage liberal discovery and minimize surprise at trial. *Kelch v. Mass Transit Administration,* 287 Md. 223 (1980). *Klein v. Weiss,* 284 Md. 36 (1978). The rules should not be used to "stimulate the ingenuity of lawyers and judges to make the pursuit of discovery an obstacle race. . . ." *Barnes v. Lednum,* 197 Md. 398, 79 A.2d at 524 (1951). Further, where there is a willful refusal to produce documents, despite a request for them, the evidence should be excluded when it is ultimately produced at trial. *Klein v. Weiss, supra; Pare v. Rodrigue,* 256 Md. 204 (1969).

Where a party who is under a duty to supplement information willfully refuses to do so, the amended information should not be admitted into evidence at trial.

> ... there is ordinarily an obligation continuing to the time of trial to communicate any new information in the possession of the party examined..." *Klein v. Weiss,* 284 Md. 36 (1978) (applying obligation to a prior request for production of documents).

An identical rule applies to the identity of witnesses who, when not identified despite a request therefor, should not be allowed to testify. *See, e.g., Davis v. Marathon Oil Co.,* 528 F.2d 395 (6th Cir. 1975) (where witnesses were not identified until three days prior to trial, lower court was correct in refusing to allow them to testify).

In the instant case, Alexander's conduct in withholding documents and the identity of witnesses, in addition to his repeated failures to attend depositions entirely, was a blatant, willful abuse of the discovery process.

We are mindful that "a trial judge has a large measure of discretion in applying sanctions for failure to adhere to discovery rules" (citations omitted) and that "the sanctions for failure to comply with the rules are comprehensive and adequate to insure compliance," *Broadwater v. Arch,* 267 Md. 329, 297 A.2d 671 (1972). To insure compliance, however, a sanction must be applied. In the instant case, appellee's "deliberate attempt(s) to hinder or prevent effective presentation of defenses or ..." rebuttal and "stalling in revealing (his) own weak claim or defense ...", *Rubin v. Gray,* 35 Md. App. 399 (1979), were not sanctioned at all and in light of the uncontradicted evidence of the willful withholding of pertinent information, the admission of the evidence and testimony was clearly prejudicial. *Rotwein v. Bogart,* 227 Md. 434, 177 A.2d 258 (1962). Their admission was an abuse of judicial discretion sufficient to warrant reversal. *Radman v. Harold,* 279 Md. 167, 367 A.2d 472 (1977).

Appellee's conduct was contumacious and willful and the trial court should not have admitted the documentary evidence or permitted the witness Ms. Alexander to testify.

## II.

Appellee was ordered by the lower court twice to appear for a noted deposition. When Alexander finally appeared for the deposition, pursuant to a court order, he unjustifiably refused to answer any questions concerning his law practice or his conduct as an attorney. This refusal was based upon "... the grounds it's not your business...." As the underlying action was for legal malpractice, it can hardly be disputed that questions concerning his practice were relevant.

Appellants, prior to trial, moved for a default judgment based upon appellee's willful and continuing refusal to submit to discovery. *Womble v. Miller,* 25 Md. App. 656 (1975). On the morning of trial, appellant's attorney requested that the trial judge decide the motion. He refused, based solely upon the statement made by appellant's attorney that he was ready for trial.

Appellants argue that since the court never ruled on the motion they were forced to forgo conducting necessary discovery to which they were entitled and which they sought diligently. Appellants contend that the refusal was prejudicial because it deprived appellants of the opportunity to elicit crucial information from Alexander prior to the trial.

Ordinarily, a trial will not be postponed or delayed by reason of incompletion of discovery. Md. Rule 526. However, upon motion, for good cause shown and notice to all parties, the court may grant a postponement of trial, *Id.* The problem in this issue, however, is that the appellant did not ask for a continuance. He reported he was ready for trial and did not accept the trial court's invitation to move for a continuance after which any pretrial motion would be considered. The issue therefore, was waived.

Under these circumstances, the trial court did not abuse its discretion when it did not hear appellants' motion to strike counterclaim immediately before trial.[1]

### III.

Appellants contend that the trial court committed reversible error when it prohibited their expert witness from answering a hypothetical question based upon facts presented at trial.

The admissibility of a hypothetical question is largely left to the discretion of the trial court. *O'Doherty v. Catonsville Plumbing and Heating Co., Inc.,* 269 Md. 371 (1973).

Appellants propounded a series of hypothetical questions to which appellee objected on the ground that the hypothetical assumed facts were not yet in evidence before the jury. In each instance the trial court ruled that the proposed question contained facts which were not yet testified to and refused to permit the hypotheticals to be asked. We find no abuse of the trial court's discretion.

### IV.

The principal allegation of legal malpractice in this case centered around the appellant's failure to appear for trial and his subsequent arrest on a bench warrant. At trial appellee offered into evidence a transcript purportedly of the proceedings in the District Court. The transcript was not authenticated and had no certification that it was a true test copy of the District Court proceedings.

Appellant also submitted a transcript of the proceedings in the District Court of April 23, 1979. That transcript was transcribed from the official record of proceedings and certified as a true copy. The court admitted both transcripts into evidence on the theory that the jury was the ultimate

---

1. In addition, as we note in Issue VII, *infra,* the issue as to the counterclaim is moot as Alexander dismissed the counterclaim at the time of trial.

arbiter of the facts and it could decide which transcript more accurately reflected the events at the District Court hearing.

Under Maryland law it is well settled that a court may not admit into evidence a transcript of proceedings when the transcript does not contain a certificate that it is a true copy. *Harrod v. State,* 39 Md. App. 230 (1978).

The admission into evidence of appellee's uncertified, unauthenticated transcript amounted to reversible error.

## V.

Appellants contend that the trial judge committed reversible error when it admitted into evidence the official court file of appellant's original criminal action. Neither the appellants nor the appellee have offered any relevant legal argument whatsoever on this issue in either their briefs or their oral argument and in light of our determination previously that reversible error has been committed in this case, we decline to consider and decide this issue.

## VI.

Appellants urge that the trial court erred when it gave the jury an instruction as to contributory negligence. We need not reach this issue. The evidence of appellant's alleged contributory negligence is predicated upon the evidence of the conversation between appellant's brother and the appellee which we have decided was not under the circumstances of this case admissible. We shall not rule upon the admissibility of any other evidence as to contributory negligence in the event of retrial.

## VII.

The issue involving the appellant's motion for summary judgment as to appellee's counterclaim is moot as Alexander dismissed his counterclaim at the time of trial.

## VIII.

At a hearing during discovery proceedings the presiding judge entered an order compelling appellee's attendance at a deposition and the payment of all costs relating thereto. No exception to that order was ever filed. The money for security for costs was deposited in court. At the conclusion of the trial below appellants moved for the release of the security for costs and attached to their petition a bill to show that the court reporter's bill exceeded the security deposited. The trial judge denied the petition without giving a reason.

Md. Rule 328 allows for the release of security for costs, regardless of whether any particular party wins or loses on a claim, and regardless of whether the claim was voluntarily dismissed or not. Pursuant to an order of the Montgomery County Circuit Court, appellee was required to pay appellants all of the costs connected with ordering an expedited transcript. This was regardless of whether the transcript referred to appellee's counterclaim or appellants' original claim. Further, there was no qualification placed upon the order allowing costs as to whether the counterclaim was dismissed voluntarily or otherwise. In short, a judge of the lower court specifically ordered that appellee pay costs connected with the taking of a deposition. That deposition took place and appellants properly moved for the release of the security for said costs so that the bills might be paid.

The trial judge should have entered an order releasing the funds held as security for costs to the appellant.

> *Judgment reversed, remanded for new trial; order to release funds held as security for costs of deposition to appellant to be signed by trial judge; costs to be paid by appellee.*