587 A.2d 551

**Edward F. SHENK, et ux.**

v.

**Patricia E. BERGER.**

**No. 301, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

March 27, 1991.

Henry L. Belsky (Schlachman, Belsky & Weiner, P.A., on the brief), Baltimore, for appellants.

Walter S.B. Childs, Annapolis, for appellee.

Argued before GARRITY, WENNER and FISCHER, JJ.

GARRITY, Judge.

Dissatisfied with the amount of their award, Edward F. and Christine A. Shenk appeal from a judgment entered by the Circuit Court for Anne Arundel County (Williams, J.). The Shenks brought suit against Patricia E. Berger for injuries Mr. Shenk sustained as the result of a vehicular accident. We will deal with issues surrounding the right to discover a surveillance film of Mr. Shenk's activities and the subsequent admission of the film into evidence.

## Background

On June 15, 1986, at approximately 2:30 p.m., Edward F. Shenk, who had been traveling in the westbound direction

on Greenbranch Lane, brought his vehicle to a stop at the intersection of Crain Highway in Anne Arundel County. Mr. Shenk had crossed the northbound lanes of Crain Highway and was stopped in the cross-over area waiting for southbound cars to pass in order to complete his turn.

Patricia E. Berger, who had been waiting behind Mr. Shenk's vehicle at the stop sign on Greenbranch Lane, also crossed the northbound lanes of Crain Highway from Greenbranch Lane. Upon reaching the cross-over area, however, she struck Mr. Shenk's stationary vehicle in the rear. Mr. Shenk suffered numerous injuries to his neck and back areas, including a herniated disc, cord compression and disc protrusions.

About six weeks post-accident, representatives of the appellee contacted Robert E. Hoffman, owner and director of Checkmate Investigative Services, who arranged for a private investigator to conduct surveillance of Mr. Shenk at his residence. The service received instruction to provide a videotape depicting Mr. Shenk at times when he was not wearing his neck collar. The period of surveillance covered from July 25, 1986 through August 1, 1986. On July 28, 1986, Adrienne Herold videotaped Mr. Shenk while he was engaged in activities. The tape revealed Mr. Shenk carrying a small bag of trash as well as squatting down on his legs in order to touch up with paint a damaged area on the rear bumper of his truck.

On July 25, 1988, Edward Shenk filed suit against Patricia Berger and propounded interrogatories. Mr. Shenk's interrogatory # 7 asked the following question: "Identify each person who investigated the causes of, circumstances surrounding, and/or damages suffered as a result of the collision." His interrogatory # 12 read as follows: "State whether you possess or control photographs, motion pictures, plats, diagrams of the scene, objects and/or parties connected with the collision, and identify the type and subject matter of each."

In her Answers to Interrogatories filed September 21, 1988, Ms. Berger responded to interrogatory # 7 by writing, "Ernest Schmidhauser, Catharine Rankin, H.A. McDonald, State Farm Insurance, 195 Ritchie Highway, Severna Park, Maryland 21146, and Robert E. Hoffman, Checkmate Investigative Services, 9009 Mendenhall Court, Columbia, Maryland 21045." In her response to interrogatory # 12 Ms. Berger wrote, "[p]hotographs are in the possession of my attorney." In a postscript to correspondence which Ms. Berger's attorney addressed to the Shenks' attorney on March 22, 1989, Ms. Berger's attorney informally supplemented Ms. Berger's answer to interrogatory # 7 by writing "P.S. To update our interrogatory answers, please add to answer # 7 along with Robert E. Hoffman, the name of Adrienne Herold, same address."

At the beginning of trial, Ms. Berger's counsel advised the court that he would be offering a videotape into evidence. Counsel for the Shenks strenuously objected to the admission of this evidence on the basis that Ms. Berger did not include the videotape in her answer to interrogatory # 12. Ms. Berger's attorney indicated that the tape was not discoverable as it constituted attorney work product. The court ruled as follows,

> [a]ctually over the years this sort of thing has been held to be work product and not discoverable and I don't see any basis to change that in this case. Certainly it's just a depiction of a portion of time in the plaintiff's life and obviously very relevant, so I will permit it to be shown to the jury.

At the conclusion of the trial the jury returned a verdict for the plaintiff. Despite evidence indicating that Mr. Shenk had suffered $40,692.89 in damages, the jury awarded him $14,000. The jury awarded nothing to Mr. and Mrs. Shenk on their loss of consortium claim.

## I.

### Discovery of Surveillance Tape Discussion of Law

Prior to the current Maryland discovery rules, which are closely patterned after the Federal Rules of Civil Proce-

dure, *Snowhite v. State, Use of Tennant,* 243 Md. 291, 308, 221 A.2d 342 (1965) (Maryland looks to corresponding federal rule for guidance in construing similar Maryland rule); discovery devices were narrowly defined and of limited use. 3 Poe, *Pleading and Practice,* § 122; *Johnson v. Bugle Linen Service,* 191 Md. 268, 278, 60 A.2d 686 (1948). The existing Maryland rules are, in part, the product of a philosophy engendering liberal discovery. *Balto. Transit v. Mezzanotti,* 227 Md. 8, 13, 174 A.2d 768 (1961) (discovery rules deliberately designed to be broad, comprehensive in scope and liberally construed); *Barnes v. Lednum,* 197 Md. 398, 407–408, 79 A.2d 520 (1951) (rules intended to facilitate discovery); *Klein v. Weiss,* 284 Md. 36, 55, 395 A.2d 126 (1978) (fundamental discovery objective is disclosure of facts as to eliminate confusion); *Kelch v. Mass Transit Adm.,* 287 Md. 223, 229–230, 411 A.2d 449 (1980) (discovery rules liberally construed); *Hadid v. Alexander,* 55 Md.App. 344, 350, 462 A.2d 1216 (1983) (clear policy to encourage liberal discovery); *see also Sommers v. Wilson Bldg. R. Ass'n.,* 270 Md. 397, 402, 311 A.2d 776 (1973) (acquisition of pretrial knowledge of facts and opposing contentions). "Mutual discovery of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1946). The Court of Appeals in *Barnes v. Lednum,* 197 Md. 398, 406–407, 79 A.2d 520, wrote "[m]odern discovery statutes or rules are intended to facilitate discovery, not to stimulate the ingenuity of lawyers and judges to make the pursuit of discovery an obstacle race.... No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiry into the facts underlying his opponent's case.' " (quoting *Hickman, supra,* 329 U.S. at 507, 67 S.Ct. at 392).

The tension that ensued from attorneys' obligation to respond to discovery requests and their duty to their clients resulted in the development of the work product doctrine. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451

(1946), the seminal case construing work product, serves as the basis of numerous federal and state court opinions addressing this aspect of the boundaries of discovery. *See* Clermont, *The Work Product Doctrine,* 68 Cornell L.Rev. 760 (1983); Jones, *The Law of Evidence,* § 19.19 (6th ed. 1973, 1984 suppl.). In *Hickman,* 329 U.S. at 510, 67 S.Ct. at 393, the Court explained that

> [the] attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or performed by an adverse party's counsel in the course of his legal duties ... falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims.

*Id.*

The central policy underlying the doctrine is the preservation of the attorney's adversarial role, the premise being that promotion of adversary preparation ultimately furthers the truth-finding process. In his concurrence, Justice Jackson eloquently captured the essence of this policy, "[d]iscovery is hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Hickman,* 329 U.S. at 516, 67 S.Ct. at 396. Other justifications, which include, *inter alia,* attorney laziness, inefficiency, and misleading discovery responses, are off-shoots of the primary adversarial concern. *See* Clermont, *supra,* 68 Cornell L.Rev. at 784–788.

Maryland Rule 2–402 partially codifies the work product doctrine. In pertinent part, it provides,

### Rule 2–402. SCOPE OF DISCOVERY

Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(a) **Generally.**—A party may obtain discovery regarding any matter, not privileged, including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and

location of persons having knowledge of any discoverable matter, if the matter sought is relevant to the subject matter involved in the action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. It is not ground for objection that the information sought is already known to or otherwise obtainable by the party seeking discovery or that the information will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. An interrogatory or deposition question otherwise proper is not objectionable merely because the response involves an opinion or contention that relates to fact or the application of law to fact.

*　　*　　*　　*　　*　　*

**(c) Trial Preparation—Materials.**—Subject to the provisions of sections (d) and (e) of this Rule, a party may obtain discovery of documents or other tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the materials are discoverable under section (a) of this rule and that the party seeking discovery has substantial need for the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of these materials when the required showing has been made, *the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.* (Emphasis added).

In the instant case, appellant sought discovery, via interrogatory and document request, of motion pictures connected with the motor tort litigation. In responding that "photographs," rather than motion pictures, were in the possession of her attorney, such incorrect answer misled the appellant into believing that no motion pictures existed.

Appellee has cited several *nisi prius* opinions, collected in "Maryland Discovery Opinions," for the proposition that surveillance films need not be disclosed. In addition to their limited precedential value, *Rubin v. Weissman,* 59 Md.App. 392, 475 A.2d 1235 (1984), these cases are inconsistent with the letter and spirit of *Kelch.* The Court in *Kelch,* 287 Md. at 231, 411 A.2d 449, explained that "[t]he principal functions to be served in providing for pretrial discovery of documents are (i) to acquire accurate and useful information with respect to testimony which is likely to be presented by an opponent, (ii) to obtain information which appears reasonably calculated to lead to the discovery of admissible evidence, and (iii) to use as an aid in cross-examining the opponent's witnesses." Here, appellant did not become aware that there was an additional discovery item until a few days before trial. The law is settled that when "a party demands of another discovery of a document or other tangible thing, the adversary, even though resisting the demand, should nonetheless be required to specifically answer whether it has in its possession or under its control such an item or items." *Kelch,* 287 Md. at 228, 411 A.2d 449.

The parties in this case present viable but opposing policy concerns which they contend place them in "catch–22" situations. The Shenks argue that without an open refusal by the appellee to answer an interrogatory or to produce the videotape, they were deprived of the opportunity to be heard at a hearing on the issue of whether good cause existed to compel production of the discovery pursuant to Md.Rule 2–402(c). Berger, on the other hand, argues that a requirement to refuse openly the requested discovery is tantamount to providing the discovery and thus undermines the preparation of her case.

Every need to provide information must be balanced against the need to withhold it. The need to know is but the converse of the need to keep secret. The only time there will be a substantial need to know about surveillance pictures will be in those instances where there

would be a major discrepancy between the testimony the plaintiff will give and that which the films would seem to portray. By the same token this would be the only instance where there is a substantial need to withhold that information from plaintiff's counsel. If the discrepancy would be the result of the plaintiff's untruthfulness, the substantial need for his counsel to know of the variance can hardly justify making the information available to him. On the other hand, if the discrepancy would result from misleading photography, the necessary background information should be made available to the plaintiff's attorney so the fraud can be exposed. It goes without saying that the means to impeach should not be the exclusive property of the defense. Any rule to be formulated, therefore, must balance the conflicting interests of the plaintiff against the conflicting interests of the defendant and protect both insofar as it is possible to do so. In addition, the objectives of the discovery rules must be kept in mind so that a just and speedy determination of cases can be obtained.

*Snead v. American Export–Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 151 (E.D.Pa.1973); *Martin v. Long Island R.R. Co.*, 63 F.R.D. 53 (E.D.N.Y.1974); *Hughes v. Groves*, 47 F.R.D. 52 (W.D.Mo.1969); cf. *Galambus v. Consolidated Freightways Corp.*, 64 F.R.D. 468, 473 (N.D.Ind.1974); *but see Blyther v. Northern Lines, Inc.*, 61 F.R.D. 610 (E.D.Pa. 1973) (surveillance films do not qualify as work product); *Hikel v. Abousey*, 41 F.R.D. 152 (D.Md.1966) (surveillance films not discoverable based on *nisi prius* opinions). The reasoning of the *Snead* court is very compelling. Consistent with both *Kelch* and *Snead,* we conclude that these concerns can best be addressed by requiring a party to disclose the existence of surveillance films.

█ If a party has films and decides it wants to use them as substantive evidence, they should be exhibited to the opposing party, provided that:

⸱ Before any of these disclosures, however, the defense must be given an opportunity to depose the plaintiff fully

as to his injuries, their effects, and his present disabilities. Once his testimony is memorialized in deposition, any variation he may make at trial to conform to the surveillance films can be used to impeach his credibility, and his knowledge at deposition that the films may exist should have a salutary effect on any tendency to be expansive. At the same time, if the plaintiff believes that the films seem to give a false impression, he can then obtain the necessary data to serve as a basis for cross-examination.

*Snead*, 59 F.R.D. at 151.

Having set forth what we believe is the appropriate manner for responding to discovery requests and handling discovery disputes, we now turn to the difficult question of what, if any, sanction should have been imposed.

■ Ordinarily, our review is circumscribed by the large degree of discretion accorded a trial judge in his application of sanctions for failure to adhere to discovery rules. We are also mindful that the sanctions for non-compliance with the rules are comprehensive and adequate to insure compliance. *Hadid v. Alexander*, 55 Md.App. at 351, 462 A.2d 1216 (quoting *Broadwater v. Arch*, 267 Md. 329, 297 A.2d 671 (1972)). In the instant case, however, the court did not reach the issue of what, if any, sanction should have been imposed due to its erroneous ruling that surveillance films are not discoverable. As we shall explain, this error was harmless.

## II.

### *Cumulative Evidence*

■ As his second contention, appellant assigns error to the use of the surveillance tape as substantive evidence enabling appellee to show malingering and, thereby, overcome the collateral source rule. We disagree.

The appellee's theory of defense was twofold: if appellant had been injured, it was a slight injury and appellant did not mitigate his damages. In support of her defense, appellee called Adrienne Herold, a private investigator who

had been retained by appellee's insurance company, to testify regarding her observations of appellant. In some detail, Ms. Herold described the various activities in which appellant had engaged during the time she surveilled him. She also testified that she operated the camera which produced the film later shown to the jury.

In *Leizear v. Butler*, 226 Md. 171, 175, 172 A.2d 518 (1961), the Court cited with approval several cases holding that, if there is evidence of malingering or exaggeration of injury, testimony that a plaintiff received his salary during the time he was not working is admissible. In this case, the court ruled that, pursuant to *Leizear*, the defense could introduce evidence that appellant was receiving sick pay which motivated him to remain off work. Appellant claims that it was an abuse of discretion for the court to permit the undisclosed film to effectuate this result.

Appellant's argument fails, however, because the film was merely cumulative of the testimony of Ms. Herold, who had not been deposed, but whose name had been disclosed in the discovery process as having investigated the case.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.